UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| YTB TRAVEL NETWORK OF ILLINOIS, INC. and YTB MARKETING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KENT McLAUGHLIN, KIMBERLY McLAUGHLIN, WILLIAM HOFFMANN, JACQUES JOHNSON and LYNETTA JOHNSON, <br><br> Defendants. | Case No. 09-cv-369-JPG |

# MEMORANDUM AND ORDER

This matter comes before the Court on Defendants's Motion to Vacate (Doc. 4) and Plaintiffs's Motion for TRO (Doc. 8). For the following reasons, the Court DENIES the Motion to Vacate and GRANTS the Motion for TRO.

## BACKGROUND

**I.  Facts**

The following facts are taken from Plaintiffs's Verified Complaint and the affidavits attached to it which were originally filed in the Third Judicial Circuit Court, Madison County, Illinois. Plaintiffs YTB Travel Networking of Illinois, Inc. and YTB Marketing, Inc. (collectively YTB) are engaged in the travel business. YTB hosts online travel stores and recruits Referring Travel Agents (RTAs) to sell travel packages, airline tickets and other services through the virtual stores. YTB hires Independent Marketing Representatives (REPs) to recruit RTAs and other REPs. One REP may recruit a REP who recruits another REP. These later REPs are called the "downline" of the earlier REP. A highly successful REP, with many downline REPs and RTAs, may become a Director. Directors receive bonuses according to the

number of active RTAs enrolled by the Director and the Director's downline. YTB provides Directors and REPs with confidential, propriety, and password protected Downline Activity Reports, which include the names, addresses, email addresses, telephone numbers, and other personal and contact information for REPs who are downline from the REP or the Director.

A. **Applicable Agreements**

Directors are fiduciaries of YTB, and enter into contracts, called Director's Agreements, with YTB that, among other things, contain various exclusivity and non-compete clauses. Defendants William Hoffman, Kent McLaughlin, and Jacques Johnson each entered into a Director's Agreement with YTB. Hoffman, Kent McLaughlin and Jacques Johnson agreed as follows:

> I will devote my full network marketing business energy, effort, and talent exclusively to YTB. I am not working with or for, not promoting, and not representing any other network marketing business, regardless of its products or services. I further represent that no member of my immediate family, . . ., is working for or involved in any such endeavor.
>
> Violation of this Exclusivity Agreement will result in forfeiture of all commissions received by me from this date forward, and I agree to reimburse YTB for all such commissions earned.

Defendants Hoffman, Kent McLaughlin and Jacques Johnson also agreed to comply with the REP and RTA Policies and Procedures and Terms and Conditions, one of which reads as follows:

> The COMPANY REPs are free to participate in other multilevel or network marketing business ventures or marketing opportunities (collectively "network marketing"). However, during the term of this Agreement, REPs may not directly or indirectly attempt to enroll the COMPANY REPs, RTAs or Customers for any other network marketing business. Following the cancellation of a REP's Agreement, and for a period of six (6) calendar months thereafter, with the exception of a REP who was personally sponsored by the former REP, a former REP may not recruit any of the COMPANY's REPs, RTAs or customers for

another network marketing business.

Due to the online nature of YTB's business, Defendants Hoffman, Kent McLaughlin and Jacques Johnson agreed that the six month non-solicitation provision applied to all markets in which YTB conducts business. They also agreed that any breach of the non-solicitation provision would give rise to liquidated damages of $10,000 per person, per occurrence.

Finally, Defendants Hoffman, Kent McLaughlin and Jacques Johnson agreed to the Confidentiality Provision of the REP's Agreement which provides:

> Confidential Information includes, without limitation, REP customer lists and data, information relating to genealogical or downline reports, pricing, technical information, research, . . . .
>
> Lists, data and information relating to REPs, RTAs and customers remain at all times the exclusive property of the Company and must be returned to the Company upon request.
>
> Each REP agrees that he/she will not use such lists, data or information to compete with the COMPANY or for any other purpose other than to promote his/her COMPANY-related business activities.
>
> The obligations under this section will survive the termination or expiration of the Agreement.

**B.  Dispute Resolution Procedure**

The Agreements also include a dispute resolution procedure in which all disputes arising from or related to the agreements shall be resolved by non-binding mediation, followed, if necessary by arbitration. However, the Agreements expressly allow for YTB to petition a court for injunctive relief "prior to, during, or following the filing of arbitration or other proceeding or pending the rendition of a decision or award in connection with any arbitration or other proceeding."

### C. Defendant's Conduct

After becoming Directors with YTB and prior to terminating their Agreements with YTB, Defendants began recruiting their downline Directors and REPs, whom they had not personally sponsored, to leave YTB and work for a competitor, Visalus. Defendants told the downline Directors and REPs that if they did not leave YTB for Visalus, Defendants would recruit away their downline, leaving the downline Directors and REPs without a team. Plaintiffs believe that Defendants were only able to contact the downline Directors and REPs by utilizing Plaintiffs's Downline Activity Reports. Defendants continued their recruiting efforts after terminating their Agreements with YTB, but within the six month non-compete provision. In addition to in person solicitations of YTB Directors and REPs on behalf of Visalus, Defendant Hoffman has solicited YTB REPs and RTAs through an automated calling service.

## II. Procedural Posture

Plaintiffs filed this action in state court asking that a temporary restraining order enter restraining defendants and all persons acting in concert with them from recruiting, soliciting or enrolling Plaintiffs's REPs, RTAs or customers for other network marketing companies, with the exception of Plaintiffs's REPS whom Defendants personally sponsored at YTB. The Madison County Circuit Court granted the motion and entered the temporary restraining order. The TRO was issued at 4:10 p.m. on May 7, 2009 and was set to expire unless extended on May 14, 2009 at 1:00 p.m. The state court set the matter for a hearing on whether a Preliminary Injunction should enter for May 14, 2009 at 1:00 p.m.

Thirty minutes before the hearing on whether a preliminary injunction should enter, Defendants filed a Notice of Removal to federal court. The state court acknowledged the Notice of Removal, but also asserted its right to enforce its existing orders in the case. Plaintiffs asked

the state court to enter a Rule to Show Cause why Defendant Hoffmann should not be held in contempt for failing to obey the TRO. Plaintiffs indicated that they would show that Defendant Hoffmann, in the face of the TRO, actually increased the conduct from which he was enjoined by the TRO. The state court then extended the existing TRO in order to keep it from expiring so that the judge would have the power to grant the relief sought in the Petition for Rule to Show Cause. It is the extension of the TRO, granted by the state court after removal of this action, to which Defendants's Motion to Vacate is addressed.

## ANALYSIS

I. **Temporary Restraining Order**

Rule 65 of the Federal Rules of Civil Procedure governs when a court may issue a temporary restraining order. In accordance with Rule 65, the Court finds that specific uncontested facts have been presented on the record that support the issuance of a temporary restraining order. The Court finds that, by virtue of the CM/ECF system, Defendants have been served notice of the Motion.

When deciding whether to issue a temporary injunction, the Court applies the same standard as it does to a motion for a preliminary injunction. *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1083 (C.D. Ill. 2001). Preliminary injunctive relief is designed "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortgage Corp. v. Platinum Fin. Group Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). Before issuing an injunction, the Court must find that (1) Plaintiffs's position has some likelihood of success on the merits, (2) Plaintiffs will suffer irreparable harm if the injunction is not granted, and (3) no adequate remedy at law exists. *Ferrell v. United States Dep't of Housing and Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999). If these three factors are established, the Court must then balance the harms

to both parties using a "sliding scale" analysis, also taking into consideration the effect that granting or denying the injunction will have on the public. "[T]he greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor." *Ferrell*, 186 F.3d at 811.

A. **Success on the Merits**

Whether injunctive relief should be granted depends upon the enforceability of the post-employment restrictive covenant. "A restrictive covenant in an employment agreement is generally held to be enforceable if it is reasonable in geographical and temporal scope and it is necessary to protect a legitimate business interest of the employer." *Shapiro v. Regent Printing Co.*, 549 N.E.2d 793 (Ill. App. Ct. 1989). Courts also consider the unique facts and circumstances of the case when determining the reasonableness of a restrictive covenant. *Millard Maintenance Service Co. v. Bernero*, 566 N.E.2d 379, 383 (Ill.App. Ct. 1990).

Here, the restrictive covenant is for a relatively short duration, only six months. Additionally, although its geographic span is undefined, it is reasonable, given the online nature of Plaintiffs's business. Finally, it contains exceptions for Defendants's downline personal that Defendants personally sponsored.

Additionally, YTB is seeking to protect a legitimate business interest. In Illinois, an employer may have a protectable interest in trade secrets or confidential information that the former employee had access to as a result of his employment. *PCx Corp. v. Ross*, 522 N.E.2d 1333, 1339 (Ill. App. Ct. 1988). Here, YTB alleges that, as a result of their employment, Defendants had access to the Downline Activity Reports which allowed them to contact the downline Directors and REPs. If YTB proves its allegations, it will very likely succeed on the

6

merits of its claim.

**B.     Irreparable Harm**

A plaintiff seeking a preliminary injunction may show that he will suffer irreparable harm by alleging that, if not enjoined, defendant's actions will impair plaintiff's business relations or its goodwill and result in losses that are difficult or impossible to quantify. *See, American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, 780 F.2d 589, 596 (7th Cir. 1985). Here, YTB alleges that, by recruiting away its seasoned staff to work for a direct competitor, Defendants will cause YTB to suffer losses to its future revenue that will be difficult to calculate.

**C.     No Adequate Remedy at Law**

YTB alleges that awarding it monetary damages will not fully compensate it for its loss because its business will be affected far out into the future and may never fully recover.

**D.     Harm to the Public from Granting the Injunction**

Because, the restrictive covenant only lasts for six months and contains an exception for those downline personnel directly sponsored by Defendants, the effect on the public of granting the temporary injunction is minimal. Furthermore, the Court finds that there is a legitimate public interest in maintaining the status quo in situations such as this one, where the state court's temporary restraining order may have expired and the federal court has not had the time to schedule a hearing on whether a preliminary injunction should enter.

**II.    Motion to Vacate**

Defendants ask this Court to vacate the state court's order extending the duration of its temporary restraining order, which would otherwise have expired under its own terms on May

14, 2009 at 1:00 p.m., or by force of statute on May 17, 2009 at 4:10 p.m.  735 ILCS 5/11-101.

The Illinois court's order is clear: "The extension of the TRO is done pursuant to the Court's inherent contempt powers pending full hearing on the Rule to Show Cause."  This Court has no jurisdiction over the state court's contempt proceedings via the removal statute, so it cannot hear those proceedings.  Nor does comity allow this Court to vacate a state court's order taken pursuant to that court's inherent contempt power.  Because the state court was acting pursuant to its inherent contempt powers when it extended the TRO, this Court will not undertake to vacate that order.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants's Motion to Vacate (Doc. 4). The Court GRANTS Plaintiffs's Motion for Temporary Restraining Order (Doc. 8).

**IT IS THEREFORE ORDERED AS FOLLOWS:**

Defendants and all persons acting in concert with them having actual notice of this Order are hereby restrained and enjoined from any and all recruitment, solicitation or enrollment, directly or indirectly through any person or medium, of Plaintiffs's REPs, RTAs and/or customers for other network marketing companies, with the exception of Plaintiffs's REPs whom Defendants personally sponsored at YTB.

This Order is issued on May 27, 2009 at 9:00 a.m. and, unless extended, shall expire on June 11, 2009 at 9:00 a.m., or upon further order of the Court, whichever is earlier.

The Court will hold a hearing Plaintiffs's Motion for Preliminary Injunction on June 3,

2009 at 1:30 p.m in the federal courthouse in Benton, Illinois.

**IT IS SO ORDERED.**
**DATED: May 27, 2009 at 9:00 a.m.**

<u>s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**