UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| YTB TRAVEL NETWORK OF ILLINOIS, INC. and YTB MARKETING, INC., | |
|---|---|
| Plaintiffs, | Case No. 09-cv-369-JPG |
| v. | |
| KENT McLAUGHLIN, KIMBERLY McLAUGHLIN, WILLIAM HOFFMANN, JACQUES JOHNSON and LYNETTA JOHNSON, | |
| Defendants. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs's Motion for Preliminary Injunction (Doc. 8), Plaintiffs's Motion to Remand (Doc. 7), Defendants's Motion to Dismiss (Doc. 14) and Defendants's Motion for Bond (Doc. 16). On June 3, 2009, the Court held a hearing on these matters. Being fully advised in the premises, the Court rules as follows.

## BACKGROUND

**I.      Facts**

The following facts are taken from Plaintiffs's Verified Complaint, the affidavits attached to it which were originally filed in the Third Judicial Circuit Court, Madison County, Illinois, and the evidence presented at the hearing. Plaintiffs YTB Travel Networking of Illinois, Inc. and YTB Marketing, Inc. (collectively YTB) are multi-level network marketing companies engaged in the travel business. YTB hosts online travel stores and recruits Referring Travel Agents (RTAs) to sell travel packages, airline tickets and other services through the virtual stores. YTB hires Independent Marketing Representatives (REPs) to recruit RTAs and other REPs. One REP may recruit a REP who recruits another REP. These later REPs are called the "downline" of the

earlier REP. A highly successful REP, with many downline REPs and RTAs, may become a Director. Directors receive bonuses according to the number of active RTAs enrolled by the Director and the Director's downline. YTB provides Directors and REPs with confidential, propriety, and password protected Downline Activity Reports, which include the names, addresses, email addresses, telephone numbers, and other personal and contact information for REPs who are downline from the REP or the Director.

### A. Applicable Agreements

Directors are fiduciaries of YTB, and enter into contracts, called Director's Agreements, with YTB that, among other things, contain various exclusivity and non-compete clauses. Defendants William Hoffman, Kent McLaughlin, and Jacques Johnson each entered into a Director's Agreement with YTB. Hoffman, Kent McLaughlin and Jacques Johnson agreed as follows:

> I will devote my full network marketing business energy, effort, and talent exclusively to YTB. I am not working with or for, not promoting, and not representing any other network marketing business, regardless of its products or services. I further represent that no member of my immediate family, . . ., is working for or involved in any such endeavor.
>
> Violation of this Exclusivity Agreement will result in forfeiture of all commissions received by me from this date forward, and I agree to reimburse YTB for all such commissions earned.

Defendants Kimberly McLaughlin and Lynetta Johnson signed this portion of the agreement as well. Defendants Hoffman, Kent McLaughlin and Jacques Johnson also agreed to comply with the REP and RTA Policies and Procedures and Terms and Conditions, one of which reads as follows:

> The COMPANY REPs are free to participate in other multilevel or network

marketing business ventures or marketing opportunities (collectively "network marketing"). However, during the term of this Agreement, REPs may not directly or indirectly attempt to enroll the COMPANY REPs, RTAs or Customers for any other network marketing business. Following the cancellation of a REP's Agreement, and for a period of six (6) calendar months thereafter, with the exception of a REP who was personally sponsored by the former REP, a former REP may not recruit any of the COMPANY's REPs, RTAs or customers for another network marketing business.

Due to the online nature of YTB's business, Defendants Hoffman, Kent McLaughlin and Jacques Johnson agreed that the six month non-solicitation provision applied to all markets in which YTB conducts business. They also agreed that any breach of the non-solicitation provision would give rise to liquidated damages of $10,000 per person, per occurrence.

Finally, Defendants Hoffman, Kent McLaughlin and Jacques Johnson agreed to the Confidentiality Provision of the REP's Agreement which provides:

> Confidential Information includes, without limitation, REP customer lists and data, information relating to genealogical or downline reports, pricing, technical information, research, . . . .
>
> Lists, data and information relating to REPs, RTAs and customers remain at all times the exclusive property of the Company and must be returned to the Company upon request.
>
> Each REP agrees that he/she will not use such lists, data or information to compete with the COMPANY or for any other purpose other than to promote his/her COMPANY-related business activities.
>
> The obligations under this section will survive the termination or expiration of the Agreement.

**B.     Dispute Resolution Procedure**

The Agreements also include a dispute resolution procedure in which all disputes arising from or related to the agreements shall be resolved by non-binding mediation, followed, if necessary by arbitration. However, the Agreements expressly allow for YTB to petition a court

3

for injunctive relief "prior to, during, or following the filing of arbitration or other proceeding or pending the rendition of a decision or award in connection with any arbitration or other proceeding."

### C. Defendant's Conduct

After becoming Directors with YTB and prior to terminating their Agreements with YTB, Defendants began recruiting their downline Directors and REPs, whom they had not personally sponsored, to leave YTB and work for another network marketer, Visalus. Plaintiffs assert that Defendants told the downline Directors and REPs that if they did not leave YTB for Visalus, Defendants would recruit away their downline, leaving the downline Directors and REPs without a team. Plaintiffs believe that Defendants were only able to contact the downline Directors and REPs by utilizing Plaintiffs's Downline Activity Reports or other proprietary data.

Defendants continued their recruiting efforts after terminating their Agreements with YTB, but within the six month non-compete provision. In addition to in-person solicitations of YTB Directors and REPs on behalf of Visalus, Defendant Hoffman has solicited YTB REPs and RTAs through an automated calling service. Defendants counter that there was widespread dissatisfaction with YTB among the salesforce. They contend that the YTB Directors and REPS initiated the inquiries into working for Visalus, and that, in some cases, Defendants did not realize that the person they were recruiting was affiliated with YTB.

## II. Procedural Posture

Plaintiffs filed this action in state court asking that a temporary restraining order enter restraining defendants and all persons acting in concert with them from recruiting, soliciting or enrolling Plaintiffs's REPs, RTAs or customers for other network marketing companies, with the

exception of Plaintiffs's REPS whom Defendants personally sponsored at YTB. The Madison County Circuit Court granted the motion and entered the temporary restraining order. The TRO was issued at 4:10 p.m. on May 7, 2009 and was set to expire unless extended on May 14, 2009 at 1:00 p.m. The state court set the matter for a hearing on whether a Preliminary Injunction should enter for May 14, 2009 at 1:00 p.m.

Thirty minutes before the hearing on whether a preliminary injunction should enter, Defendants filed a Notice of Removal to federal court, asserting that the Court has diversity jurisdiction over this action as the parties are of diverse citizenship and more than $75,000 is in controversy. Plaintiffs filed a motion to remand contending that the jurisdictional amount in controversy does not exist because this action is for injunctive relief only. The damages claim will be heard by an arbitrator, per the alternative dispute resolution procedures set forth in the contracts. Plaintiffs also filed a motion for a preliminary injunction to issue. The Court entered a temporary restraining order and set the cause for hearing. Defendants have filed a motion to dismiss, asserting that Plaintiffs's complaint fails to state a claim for which relief can be granted. In the event that the Court issues a preliminary injunction, Defendants ask that the Court order Plaintiffs to post a surety bond because, they contend, Plaintiffs's financial situation is precarious.

## ANALYSIS

**I.  Motion to Remand**

As an initial matter, the Court finds that it has jurisdiction over this action because the parties are of diverse citizenship and more than $75,000 is in controversy. 28 U.S.C. § 1332. In an action seeking equitable relief pending arbitration on the controversy, "[I]n order to ascertain

whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute." *Id*. *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir.2004). Here, the complaint alleges that on at least eight occasions, Defendants have violated the terms of the Director's Agreement. Each violation potentially gives rise to liquidated damages in the amount of $10,000. Accordingly, it is clear from the face of the complaint that the stakes of the underlying arbitration dispute meet the jurisdictional amount. Accordingly, the Court has jurisdiction over this action, notwithstanding that the ultimate disposition of any suit for damages will be decided in arbitration. The Court, therefore, denies the Motion for Remand.

## II. Preliminary Injunction

Preliminary injunctive relief is designed "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortgage Corp. v. Platinum Fin. Group Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). Before issuing an injunction, the Court must find that (1) Plaintiffs's position has some likelihood of success on the merits, (2) Plaintiffs will suffer irreparable harm if the injunction is not granted, and (3) no adequate remedy at law exists. *Ferrell v. United States Dep't of Housing and Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999). If these three factors are established, the Court must then balance the harms to both parties using a "sliding scale" analysis, also taking into consideration the effect that granting or denying the injunction will have on the public. "[T]he greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor." *Ferrell*, 186 F.3d at 811.

A.      **Success on the Merits**

Whether injunctive relief should be granted depends upon the enforceability of the restrictive covenant. "A restrictive covenant in an employment agreement is generally held to be enforceable if it is reasonable in geographical and temporal scope and it is necessary to protect a legitimate business interest of the employer." *Shapiro v. Regent Printing Co.*, 549 N.E.2d 793 (Ill. App. Ct. 1989). Courts also consider the unique facts and circumstances of the case when determining the reasonableness of a restrictive covenant. *Millard Maintenance Service Co. v. Bernero*, 566 N.E.2d 379, 383 (Ill.App. Ct. 1990).

1.      **Reasonable in Scope**

Here, the restrictive covenant is for a relatively short duration, only six months. Plaintiffs argue that, although the restrictive covenant's geographic span is undefined, it is reasonable, given the online nature of Plaintiffs's business. Plaintiffs also point out that it does not prevent Defendants from leaving YTB to work for a competitor, it merely prohibits them from soliciting away sales staff whom Defendants did not personally sponsor. Defendants counter that the restrictive covenant is unreasonable because it is not confined geographically at all. Nor is the restriction limited to the travel industry, but includes any network marketing business, making the covenant impermissibly broad.

There are actually two different restrictive covenants at work here. The first is the one that prohibited Defendants from working for any other direct marketing company, regardless of the goods and services sold, while they were acting as Directors of YTB. The second is the one that prohibits Defendants from taking their downline, including customers, except those personally recruited by Defendants, with them to any other network marketing business. But

7

neither restrictive covenant purports to prevent Defendants from leaving Plaintiffs's employ and working for a competitor. Additionally, the non-solicitation provision is only for a duration of six months and contains exceptions for those members of Defendants's sales team whom they personally sponsored. As such, the Court finds that the Plaintiffs have some likelihood of showing to the satisfaction of the trier of fact that these restrictive covenants are reasonable in scope.

## 2. Necessary to Protect a Legitimate Business Interest

In Illinois, an employer may have a protectable interest in trade secrets or confidential information that the former employee had access to as a result of his employment. *PCx Corp. v. Ross*, 522 N.E.2d 1333, 1339 (Ill. App. Ct. 1988). "Reasonable restrictive covenants will . . . be enforced . . . where the former employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit." *Springfield Rare Coin Galleries, Inc. v. Mileham*, 620 N.E. 479 (Ill. App. Ct. 1993). Here, YTB alleges that, as a result of their employment, Defendants had access to the Downline Activity Reports which allowed them to contact the downline Directors and REPs. They did this in order to increase their "downline," and therefore their bonuses, with a competitor of YTB.

A reasonable restrictive covenant will also be enforced "where, by the nature of the business, the customer relationship is near permanent and, but for his association with plaintiff, defendant would not have had contact with the customers in question." *Id*. Defendants focus on this test and argue that customers of travel sales sites do not have "near permanent relationships" with their online sales reps. However, YTB need not meet this test if it can prove its allegations that Defendants got the confidential customer contact information through the DARs and then

attempted to use it for their own benefit.

The evidence presented at the hearing establishes that Plaintiffs have some likelihood of showing that the restrictive covenants seek to protect a legitimate business interest. Evidence was presented from which a trier of fact could determine that Defendants had access to confidential information, in the form of contact information for their downlines, whom they did not personally sponsor. A trier of fact could find that Defendants only had access to this information by virtue of their positions as Directors of YTB, and that they used the information in an attempt to benefit themselves at the expense of YTB.

### B. Irreparable Harm

A plaintiff seeking a preliminary injunction may show that he will suffer irreparable harm by alleging that, if not enjoined, defendant's actions will impair plaintiff's business relations or its goodwill.. *See, American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, 780 F.2d 589, 596 (7th Cir. 1985). The Court must balance the harm that may flow to the plaintiff from denying injunctive relief with the harm that may flow to the defendant from granting it. *Id*. at 593.

Here, YTB alleges that, by recruiting away its seasoned staff to work for a competitor, Defendants will cause YTB to suffer losses to its future revenue that will be difficult to calculate. Plaintiffs may not recover from such a loss for years, if ever. On the other hand, Defendants's ability to recruit a sales staff of their choosing if the injunction enters is only impaired for six months. Furthermore, Defendants are free to recruit sales staff not currently working as YTB REPS. Therefore, the balance of harms weighs in favor of Plaintiffs on this factor.

### C. No Adequate Remedy at Law

Although liquidated damages clauses, in order to avoid being treated as an unenforceable penalty, must represent the contracting parties's estimate of the actual damages a breach of the contract would cause, *River East Plaza L.L.C v. Variable Annuity Life*, 498 F.3d 718, 722 (7th Cir.2007)(applying Illinois law), such clauses are not necessarily incompatible with the need for injunctive relief. *SSA Foods, Inc. v. Giannotti*, 434 N.E.2d 460, 463 (Ill. 1982). This is especially true when the language of the agreement indicates that "the parties contemplated injunctive relief to prevent future violations, in addition to the damages for past violations." *McRand, Inc. v. van Beelen*, 486 N.E. 2d 1306, 1313 (Ill. App. 1985). Here, the dispute resolution procedures outlined in the agreements indicate that the parties contemplated the availability of injunctive relief through the courts to prevent ongoing violations, in addition to the availability through mediation or arbitration of liquidated damages for past violations. The Court finds that, if YTB proves its allegations, awarding it monetary damages will not fully compensate it for its loss because its business will be affected far out into the future and may never fully recover.

**D.     Harm to the Public from Granting the Injunction**

Defendants contend that granting a preliminary injunction would result in decreased competition and increased prices to consumers. However, Defendants are not prevented from working for competitors, only from recruiting away their YTB downline. Therefore, the Court finds consumer costs will not increase, and the public will suffer no harm from granting the preliminary injunction

Because the Court finds that Plaintiffs's position has some likelihood of success on the merits, that Plaintiffs will suffer irreparable harm if the injunction is not granted, that no

adequate remedy at law exists, and that the balance of harms weighs in favor of granting the preliminary injunction, the Court grants Plaintiffs's motion. By the same token, Defendants's Motion to Dismiss for failure to state a claim is denied.

### III. Surety Bond

Rule 65(c) states, "The court may issue a preliminary injunction . . .only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In accordance with the Rule, the Court grants Defendants's Motion for Bond. The Court finds that $30,000 will adequately protect Defendants's interests.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs's Motion to Remand (Doc. 7), **DENIES** Defendants's Motion to Dismiss (Doc. 14), **GRANTS** Plaintiffs's Motion for Preliminary Injunction (Doc. 8), and **GRANTS** Defendants's Motion for Bond (Doc. 16).

**IT IS THEREFORE ORDERED AS FOLLOWS:**

Defendants and all persons acting in concert with them having actual notice of this Order are hereby restrained and enjoined from any and all recruitment, solicitation or enrollment, directly or indirectly through any person or medium, of Plaintiffs's REPs, RTAs and/or Directors for other network marketing companies, with the exception of Plaintiffs's REPs whom Defendants personally sponsored at YTB.

**IT IS FURTHER ORDERED AS FOLLOWS:**

Plaintiffs shall post with the Court a surety bond in the amount of $30,000 (thirty

thousand dollars) within 10 days of the entry of this Order.

**IT IS SO ORDERED.**
**DATED: June 9, 2009**

                                             s/ J. Phil Gilbert
                                             **J. PHIL GILBERT**
                                             **DISTRICT JUDGE**